No one arguing for petitioner and for respondent for the attorney general argument is via video. And counsel, are you able to to hear us? Okay. Yes. Good morning, your honor. Okay. So you have ten minutes and whenever you're ready. Thank you, your honor. Good morning. May it please the court on behalf of the respondent, the attorney general, the answering brief that I filed address 3 main issues. 1st, the untimeliness of Mr. Alvarenga asylum application, the adverse credibility finding and the denial of his application for cap protection because additional counsel is not here. Certainly the arguments in my answering brief, I'm happy to rest on those arguments. I think they sufficiently cover the issues, but I'm also happy to address any issues or questions your honors have with respect to any of those 3 issues. All right. So I have a number of questions on the credibility finding by the agency. So let me and 2 in particular. So let me start with my 1st 1. Quoting from page 42 of your brief. Initially, the now petitioner testified, he began making payments at the end of November 07, etc. And also testified that he left El Salvador a month later, thereby making it impossible for him to complete 6 months of consecutive payments upon being confronted with this contradiction. Alvarenga changed his testimony and claimed that he made payments in 2006. And the record site in your brief is to, I believe, 1st, the IJ at AR 61 to 62, and then to the administrative record at 122 to 126. I can't find anything in the administrative record that shows that upon being confronted with this supposed contradiction, Alvarenga changed his testimony and claimed that he made payments in 2006. I have pages 122 to 126 of the record in front of me. Can you tell me where in that where in the record that you cited, there is the confrontation with the contradiction and he changed his testimony? Because, as I said, I can't find it. Yes, I think if you go to pages 124 and 125 at the bottom of page 124. Or maybe towards the end of the question was, and you didn't begin to pay the rent either time. I think he means the 1st and 2nd time you were threatened by the gangs. And then he says the 2nd time. Yes. So you started paying rent after the 2nd time. Correct. And then so you started paying rent after the 2nd time he says, correct. And then the next page at the top of 125, he says, okay, and that would have been around 2006. Is that correct? He says, yes, I think 2006. Well, if that's what you're pointing to, I don't see that supports the agency's finding or supports the proposition that upon being confronted with a contradiction, he changed his testimony. So let me move. Can I can I ask a question about that exchange? I mean, I also had a bit of a confusion with reading the transcript. It seemed as if there was a muddle at the hearing, and maybe because the government's council was asking sort of leading questions, a load of questions. But if you look on AR 125 at the bottom, after that exchange that you were describing, Mr. Alvarenga explains again. Well, the 1st time I didn't pay the 2nd time is when they threatened me, saying that they knew where I lived. So I paid the 3rd time is when they threatened me with the firearm. So at different times, he is, in fact, saying I paid after the 2nd threat. And so I share the concern that it doesn't seem to me as if he was presented with an inconsistency and then changed the story. It seemed as if he was trying to say that he was paying after the 2nd threat the entire time. But I think in the initial he initially says beginning, the beginning of the extortion is 2006. That's when they first started threatening him and asking him for money. But there's no evidence of what date the 2nd, the 2nd threat occurred. He was asked multiple times, when is the 2nd threat? It's unclear if the 2nd threat was 2006 or 2007. And there's conflicting testimony as to whether he paid at all leading up to 2007. Then he goes back and says 2006 is when I when I paid after the 2nd time. So it's unclear when the 2nd threat actually occurred with the 2nd threat. I don't think it is because at a different point in the in the transcript, he testified that he was first approached by a gang member in early 2006 to pay rent. That was the first threat. And then about a month later, a different gang member approached and threatened that he would kill his family if he didn't pay rent. So there are aspects of the record that indicate a month later or some other time in 2006. I'm sorry, we're speaking over one. What did you say? On page 123, he also claims that no rent was paid up until November 2007. And then he changes his tune just a page or two later and says, no, he paid after the 2nd threat and the 2nd threat and he paid in 2006. So it's unclear when actually he started paying. In one instance in the testimony, he makes it seem as if he only paid after the third threat because of that gun was brandished and scared and he was scared during the third threat. And so he paid for one month. That's on page 121. But then just a few pages later in the transcript, all of a sudden he's saying he paid in 2006 after the second threat. So I think that his testimony is quite unclear and it is his burden to provide a credible case. And I think even if you set aside the council, I mean, to judge Bennett's point, we're in this transcript. Does it indicate that he was shown an inconsistency and then changed his story about the implications of starting payment in 2007, which is what the IJ relied on for his inconsistency? And I just have not been able to find it anywhere in the record. Council each 1.22, he says. He said the 3rd time that you were threatened by the gangs, he was also leaving work. He says the last days of November 2007, they said that and then I started paying the rent. That's at the bottom of 1.22. So he makes it seem as if he just started paying the rent after that 3rd threat in 2007. But then just a few pages later, he says, so the question was, so you started paying the rent after the 2nd time. He says, correct. And then he was asked, would that would have been around 2006? Is that correct? He says, yes, I think 2006. So it is it is unclear. And then later on, I think we have your argument, but I still am where I started, where even if there is perhaps some inconsistency about when each payment was made. I don't see anything in the record that supports the agency's determination that he was confronted with something and changed his testimony. I do. Following up on Judge Bennett and Judge Sanchez's questions, continuing in the in the record, in the testimony on page 126. Now, this is where the judge steps in the IJ. The question had been OK. So then what were you threatened with in November of 2007? This bottom of one twenty five answer. Well, the first time I didn't pay the second time is when they threatened me saying that they know where I lived. So I paid the third time is when they threatened me with a firearm. Here the IJ steps in. And the question is, why? Why were you threatened if you had been paying? Why were you threatened? And then Mr. Alvarenga says, oh, because they wanted me to pay more money. Is it possible that the IJ was misremembering what what the inconsistency was? The IJ stepped in. He he obviously thought there was some sort of issue with his testimony. He got an answer that actually made sense. But the IJ on page sixty one and sixty two observes that the respondent's demeanor when he testified concerning this point. I think he's got the wrong point. And it appeared to the court that the respondent was making the rather obvious calculation that in order for his testimony to be consistent and then he gets the wrong thing. But my point is, I think I'm agreeing with Judge Bennett. Even if my piecing this together is correct, the IJ made a big mistake in what he regarded credible or not credible. So isn't that enough for us to have to remand this case? No, Your Honor, because substantial evidence still stands here with regards to the other inconsistencies and omissions. For example, in his affidavit, the written declaration that he submitted with his asylum application, he did not even indicate that he made any rent payments. Let me stop you there, because that was going to be my exact second point as to where I have a problem with the agency. So I'm looking at page 225 of the now petitioner's declaration. And he says at the bottom, in my family, I am the only one that works and I could not pay one day. I was told by a gang member, the one they call the strange one, and was told that I only had one more opportunity. So I read what he's saying. I mean, it's certainly not in detail, but I read what he's saying is that he was threatened and he was paying. And that's what he meant by I could not pay one day and I only had one more opportunity. So I read his declaration directly contrary to what the agency's finding was, where I think that that paragraph that I'm reading, although not in a lot of detail, I think the only fair reading of that is that he was paying and one day he couldn't anymore, and then they threatened him. So why isn't my reading of this the correct reading? Well, I would have two points in regards to the affidavit. Number one, he doesn't mention in the affidavit that he made six months of payment. That's nowhere in his affidavit, which is a pretty big detail to leave out that you then that the petitioner then includes in his testimony. The second thing is it also is reasonable for a fact finder to interpret this paragraph in the affidavit as saying I'm the only one that works and I could not pay one day. I was told I only had one more opportunity, meaning he's been threatened and threatened and threatened and he hasn't been paying and he only has one more opportunity to start paying or else they would harm him. And that leads me to believe that. Didn't the IJ say at page 61 there is nothing in the affidavit about extortion? I'm sorry, the page 61, the end of the 1st full paragraph, the court is being asked to believe that despite the then respondents paying an extortion demand on a weekly basis over a period of 5 to 6 months, he did not consider this alleged payment of extortion fees to be sufficiently important to remember to include it in a 3 page affidavit. Right. Yes, the fact that he didn't include those weekly payments for 5 to 6 months, he didn't include that detail in the affidavit was a significant omission that supported the immigration judges credibility finding. This is the whole basis of his persecution claim is that he was that he was extorted and to leave out such an important detail about the period of time that someone is being extorted and the number of payments being made and really providing such vague details as to when any of the payments were happening. It leads a reasonable fact finder to believe that this individual is not credible. I don't think the record overall based on the testimony and the affidavit compels a reversal of that finding. In fact, his affidavit doesn't even the testimony doesn't even confirm what the affidavit says about his mother's car accident, which allegedly occurred 3 days after threats from games. I don't have a quarrel with the fact that the agency on the inconsistencies that I agree with the government are there. I don't quarrel with the fact that the agency could have found him not credible. But my problem is included in the agency's credibility findings are 2 significant ones that I don't think are supported by the record. And so I think we probably have to send this back to the agency. So with our questions, we've taken you significantly over judgment. Can I ask a question? Counsel, I wanted to ask you about another one of the inconsistencies about as to who made the second threat. And I think it came up in cross examination with government's counsel. And it seems clear that there was an inconsistency. He first testified that it was a different person. And then he testified that it was the same person if memory serves. But we have several cases that talk about that the agency cannot rely on an inconsistency to form an adverse credibility determination. If you don't give the petitioner a chance to explain that inconsistency. And I don't see any explanation being or an opportunity for him to explain why he made that inconsistent statement in the record. So why why should that be a basis for the agency to rely on that inconsistency? The second one. But it's hard to to imagine that he didn't have an opportunity. He was given. He was counseled at the time. He had an attorney at the time of this hearing, and he was provided an opportunity during cross examination and redirect to discuss the identity. I mean, he was questioned during direct examination, but also during cross examination on page 121 about whether this was the same person or not. That's sufficient opportunity during cross examination to clarify whether or not this was the same individual. And moreover, the government's counsel didn't actually point out, hey, you testified that it was a different person in your direct. And now you're saying it's the same person on your cross examination. What what what is the basis for your inconsistency? Am I am I right in that recollection? But by asking the question on page 120, DHS is giving him that opportunity. And he says, how long after the first incident did the second incident happen? The second threat? He said a month. So all of a sudden in cross examination, he's giving a specific time frame. And then he's asked, was it the same person at the bottom of page 120? And he says, yes, the same person. At that point, I don't know what more the DHS counsel is supposed to do. And what I what I what I just said, which is, by the way, you testified that it was a different person on direct, which by which, you know, government counsel did with with other things. Right. It was identifying things that counsel thought were inconsistent statements or or inconsistent positions, but just not here. And but I and I relied on that. So, I mean, that suggests to me that that might there might be some infirmity with with relying on that as a basis for an adverse credibility determination. Other than asking Mr. Alvarenga, why why was it not the same person? Even even not asking that question again. There's there's no case law that says that having an opportunity during cross examination to discuss that issue means he's somehow hindered or has has been or has a due process violation in any way or that his credibility claim was his testimony was hindered in any way. He had ample opportunity after that questioning to to provide that answer, to clarify that answer. I, I don't believe the case law says the DHS counsel must specifically ask the question. The question is, based on the record, does the IJ, the reasonable fact finder, see an inconsistency? And was the petitioner provided an opportunity to discuss that inconsistency? And I don't I don't believe maybe I'm incorrect. I don't believe the case law says that DHS counsel has to specifically ask a question about that specific issue. I think overall, the case law is what does the record provide and what is the reasonable fact finder's interpretation of that record? Counsel, do you have any final points you'd like to make? No, Your Honor, I just rest on the arguments made in my answering brief. And I thank you for your time today. All right. Do either of my colleagues have any further questions? No, thank you. And we thank counsel for their argument in the case. Just argue this.
judges: BENNETT, SANCHEZ, Holcomb